FILED
AUG 1 8 2005

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| BRET KORTIE, | ) | CIV. 03-4276 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## INTRODUCTION

This action is brought against the United States of America (the Defendant) by Bret Kortie (the Plaintiff) under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.* The Plaintiff seeks to recover damages incurred as a result of an incident which occurred on July 11, 2000. A trial to the Court of the above-entitled matter was held on June 27-28, 2005. After conducting the trial, reviewing the evidence produced therein, and considering the post-trial briefs, the Court is prepared to dispose of this matter. Judgment shall be entered in favor of the Plaintiff.

## DECISION

**1.  Negligence**

At the time of the incident which serves as the underlying basis for this action, the Plaintiff was employed by Raytheon Corporation and was working at the Earth Resources Observation Systems (EROS) Data Center near Sioux Falls, South Dakota. The Plaintiff is currently working at the same facility.[1]

---

[1] The Plaintiff is presently an Integration Engineer for Science Applications International Corporation (SAIC). SAIC is the current holder of a contract initially entered

The claim in this action arises from an incident which occurred near the main entry to the EROS facility. The main entrance of the EROS facility, with numerous doors, was constructed in 1996. By 1997, Gary Dinkel (Dinkel), the Facility Manager at the EROS facility, was noticing problems caused by wind. Wind-blown doors caused hinges to spring and damaged the closing mechanisms. The problem created stress upon the doors and threatened the structural integrity of the facility. Rod Beck (Beck), a Project Manager at the EROS facility, researched different potential answers to the problem. Metal doorstops were installed as a temporary solution in 2001. The doorstops were several inches tall with a circular base and constructed with steel that was gray in color. They were placed perpendicular to the wind-affected doors to prevent the doors from opening greater than a 90 degree angle. The doors are 36 inches in length and the doorstops were located within this same distance from the front of the facility.

Soon after the installation of the doorstops, complaints were received. The Plaintiff tripped over one of the doorstops on June 14, 2001. He completed a "Report of Near Miss, Incident, or Hazardous Condition," for Raytheon in which he suggested that the doorstops be installed closer to the building. Another employee at the facility, Diane Damm (Damm), noticed numerous individuals trip in the general proximity of the doorstops. Damm requested a work order on June 18, 2001. She notified facility management that people were tripping over the doorstops. Beck checked the problem with two other individuals and concluded that the stops were placed in the correct location. After discussing the issue with Dinkel, the decision was made to take no further action. Subsequently, orange cones were placed near the doorstops in an

---

between Raytheon Corporation and the United States Department of the Interior.

effort to bring attention to the devices. Soon after the placement of the cones, however, they were removed by order of the acting director of the facility.

On July 11, 2001, the Plaintiff left the data center around 5:30 p.m. He was carrying work-related documents in one of his hands and was focused upon traveling to a local business to purchase supplies before the store closed. As he exited the EROS facility he stepped on one of the devices. He heard a snap or a pop and fell to the ground with extreme pain in his foot. The Plaintiff alleges the negligent placement of the doorstops caused his injury.

Under the FTCA, the United States may be held liable for "personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In FTCA cases, the Court must apply the substantive law of the state where the wrongful conduct occurred. Washington v. Drug Enforcement Administration, 183 F.3d 868, 873 (8th Cir. 1999); 28 U.S.C. § 1346(b)(1).

This case is a negligence action. By statute, South Dakota law provides:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter case to the defense of contributory negligence.

SDCL § 20-9-1. The Supreme Court of South Dakota has identified the elements of negligence as duty, breach of duty, proximate and factual causation, and injury. Fisher Sand & Gravel v. State by and Through South Dakota DOT, 558 N.W. 2d 864, 867 (S.D. 1997). The Plaintiff must prove these elements by a preponderance of the evidence. Malloy v. Commonwealth Highland Theatres, Inc., 375 N.W.2d 631, 634 (S.D. 1985).

3

The parties agree that South Dakota's premises liability law applies to this action. The standards concerning this aspect of negligence law were discussed in Luther v. City of Winner, 674 N.W.2d 339 (S.D. 2004). Luther states that "a possessor of land owes a business visitor or an invitee a duty of ordinary care for the benefit of the invitee's safety." Id. at 347. There is little question that the first element, the existence of a duty, is satisfied by the facts of this case. The Defendant, as the possessor of the EROS facility and party responsible for the maintenance of the building, owed a duty of ordinary care to individuals such as the Plaintiff.

In a premises liability case, the duty requires a possessor to keep property "reasonably safe" Id. (quotation omitted). The possessor has the duty to "warn of concealed, dangerous conditions known to the landowner." Id. Generally, there is no duty to warn when the dangerous condition "is so obvious that the invitee should reasonably have been aware of it." Id. Thus, a possessor of land may not be liable if the invitee is aware of the danger or the danger is obvious. Id. However, Luther also cites with approval a comment to the Restatement (Second) of Torts, § 343, which states:

> The possessor is not relieved of the duty of reasonable care which he owes the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
>
> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it.

Id. (quoting Restatement (Second) Torts, § 343 A(1) comment f).

4

The Defendant argues that its use of the doorstops was reasonable because the employees at the EROS facility acted upon a recommendation from the architect of the building. The Court disagrees. Common sense dictates that the placement of a raised gray metal object on gray cement in the pathway to the primary entrance and exit from a busy government building is unreasonable. Lee Geiger, an architect, testified that an entry or exit from a building should be clear and that any obstruction should not be taller than ½ inch. The Court finds Geiger's testimony persuasive, and the use and placement of the doorstops unreasonable. By placing the devices directly in an area which must be traversed to enter and exit the building, the Defendant failed to keep the premises reasonably safe for its visitors and the employees of the facility. Moreover, the Defendant had the duty to warn of the danger. It fulfilled this duty by the placement of the orange cones. By removing the markers, however, it breached the same duty. In short, the Defendant created and failed to remove a potentially dangerous condition to every person entering or exiting the facility. This conduct constitutes a breach of the duties owed to the Plaintiff.

There is no doubt that the Plaintiff was aware of the danger. The Defendant, however, should have expected that physical harm could occur even to individuals with knowledge of the placement of the doorstops. The devices are relatively small in size, inconspicuous in nature and placed within one or two steps from the doorway. Thus, the failure of the Plaintiff to recall what he had previously discovered, particularly as he left his employment for the day focused upon personal tasks and events, cannot be seen as unexpected. The Defendant should have expected that employees leaving the building at the end of the day would not be focused only upon their feet as they stepped out from the facility. Considering the facts and circumstances surrounding

5

this case, the Court is not convinced the Plaintiff's general knowledge of the presence of the doorstops relieved the Defendant of its duty of ordinary care.

The Defendant argues the proximate and legal cause of the Plaintiff's injury was his own failure to exercise due care for his own safety. Proximate cause is defined as:

> that cause which is an immediate cause and which, in natural or probable sequence, produced the injury complained of. It is a cause without which the injury would not have been sustained. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.

Therkildsen v. Fisher Beverage, 545 N.W.2d 834, 837 (S.D. 1996) (quoting South Dakota Pattern Jury Instruction 15-02 (2004)). The Defendant's placement of the doorstop and failure to remove the device after notice that it was a hazard directly contributed to the injury sustained by the Plaintiff. No injury would have occurred if the Defendant had not placed the doorstop in the pathway near the doors to the building. The Court finds that the proximate and legal cause element is satisfied.

The final element is the existence of an actual injury. After stepping on the doorstop, the Plaintiff initially sought emergency medical treatment at the Dells Area Health Center in Dell Rapids, South Dakota. In the following months, the Plaintiff received treatment at the Central Plains Clinic in Sioux Falls from a podiatrist, John E. Forrette, D.P.M. (Dr. Forrette), and other physicians. A bone scan eventually revealed a stress fracture at the first metatarsal head. Examinations also revealed early osteoarthritic changes. In January 2002, the Plaintiff began receiving treatment from Franklin G. Alvine, M.D. (Dr. Alvine), an orthopaedic surgeon specializing in foot and ankle surgery. On April 4, 2002, Dr. Alvine performed exploratory and

6

therapeutic surgery on the Plaintiff's injured toe. Dr. Alvine found probable traumatic arthritis of the first metatarsal phalangeal joint. Damaged cartilage was removed and the joint was cleaned. Dr. Alvine eventually assessed a 2% whole body disability rating and testified that the Plaintiff has incurred a permanent injury to his toe. The Court finds the final element of the Plaintiff's negligence case is satisfied.

The Defendant argues that the Plaintiff's conduct constitutes contributory negligence and he is barred from recovering damages or in the alternative his recovery should be reduced. "Contributory negligence is conduct for which a plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which the defendant is responsible, contributed to the injury complained of as a proximate cause." Wood v. City of Crooks, 559 N.W.2d 558, 559 n. 3 (S.D. 1997). In support of its argument, the Defendant cites the Plaintiff's testimony in which he admitted his knowledge of the presence of the doorstop; that he wasn't looking where his feet were going; that he would have missed the doorstop had he walked directly out the door; and that the doorstops were there to be seen if he would have looked for them. Although the Plaintiff could have avoided the doorstop, his failure to focus only upon his feet as he exited the building was not unreasonable. The doorstop is a small and inconspicuous hazard placed nearly directly in the path of an individual exiting the EROS facility. Any individual, even with knowledge of the existence of the devices, could easily step or trip on one of the doorstops. The Court finds that the Plaintiff was not contributorily negligent.

**2.     Damages**

a. Pain, Suffering, and Loss of the Enjoyment of Life

(1) Past

The evidence indicates that the Plaintiff received fairly extensive medical treatment for his injury. He sought care from a podiatrist, received physical therapy, and eventually underwent a surgical procedure. The care was sought primarily in an effort to reduce pain. The Plaintiff testified that he experienced a significant amount of pain at the time of the injury. He experienced numbness, constant dull pain, occasional knifing pain, and swelling in the area of the injury. He obtained orthotic inserts and custom boots in an effort to relieve the pain. The Plaintiff has also reduced his participation in sports such as soccer and softball as a result of the injury. This medical records and testimony support a finding that the Plaintiff has endured pain, suffering, and the loss of enjoyment of life. The Court finds that a reasonable award is $20,000 for past pain, suffering and loss of enjoyment of life

(2) Future

The Plaintiff also requests an award for future pain, suffering, and the loss of enjoyment of life. As the Court has noted, the Plaintiff still experiences pain. His mobility is also somewhat limited, he occasionally trips and falls, and he has difficulty kneeling and carrying heavy objects. Dr. Alvine's uncontradicted testimony indicates that the Plaintiff's injury is permanent. Dr. Alvine gave the Plaintiff a Permanent Physical Impairment rating of 2% of the whole body. The evidence supports a finding that the Plaintiff will continue to experience pain, suffering, and a loss of the enjoyment of life in the future.

The evidence does not, however, justify an award in the amount sought by the Plaintiff. Dr. Alvine testified that he does not see what would be causing the Plaintiff's pain and has not prescribed painkillers. Moreover, the Court finds that the pain suffered by the Plaintiff at the time of trial was clearly less than the pain he experienced immediately after the injury and during his receipt of medical treatment. The Plaintiff's pain has diminished over time. Finally, the Plaintiff is still able to perform activities he enjoys such as customizing vehicles, working on his wife's farm, and hunting. After considering all the evidence, the Court is not convinced the Plaintiff suffers pain and loss of enjoyment of life to the extent alleged. The Court finds that a reasonable award, after taking into consideration the Plaintiff's life expectancy, is $78,000.

c.  Medical Expenses

The Plaintiff requests an award for past medical expenses in the amount of $9,813.34. This amount is supported by Exhibit 2 and the Plaintiff is entitled to an award in the amount requested. The Court will not grant any award for future medical expenses, as no monetary request was presented. Although the Plaintiff may eventually elect to undergo an additional surgical procedure, his need for future medical care is uncertain.

d.  Loss of Income/Earning Capacity

The Plaintiff contends that his earning capacity was diminished by his injury. No claim is made for lost earnings with respect to his full-time employment at the EROS facility. Rather, the loss of earnings, past and future, relate to endeavors beyond the Plaintiff's full-time employment.

9

During the Plaintiff's entire career, he has worked outside of his primary employment by modifying and restoring automobiles. He has accumulated a substantial amount of tools and equipment to assist him in this work.

In addition, the Plaintiff's wife operates a farm called Maverick Heritage Ranch Co. raising Heirloom vegetables and rare breeds of livestock. On the farm, the Plaintiff assists by providing the grunt labor. The Plaintiff and his wife have purchased a substantial amount of equipment, supplies, and building materials for the farming operation.

(1)   Past - Vehicle Customizing

Plaintiff did not offer any evidence of a loss of earnings from working on automobiles between the time of the injury and the trial. He did testify that kneeling was painful. His tax returns do not show any income from doing this kind of work in the past. There was no credible evidence upon which the Court could find a loss of past vehicle customizing earnings resulting from the injury.

Rick Ostrander ("Ostrander"), a vocational expert, testified that the Plaintiff has suffered a reduction in his capacity to earn income from customizing vehicles. Ostrander believed that a job in the past which took the Plaintiff 400 hours to complete would now require 700 hours of labor because of the injury. This additional time corresponds to a 38% reduction in earning capacity. Ostrander concluded, however, that the Plaintiff's true earning capacity was only diminished by 15%-20%. The Court does not believe that either percentage is credible based on the Plaintiff's 2% whole body impairment or Plaintiff's testimony about his difficulty in working on automobiles. While the injury may have made it painful for the Plaintiff to kneel and work on the vehicles, it seems clear to the Court that his limitations are not significant. Moreover,

Karen Strickland, a vocational expert for the Defendant, testified that any loss of earning capacity computation is speculative without consideration of the Plaintiff's history of past earnings. The Court finds the testimony of this expert persuasive. The Plaintiff has no documented history of earnings from customizing vehicles. There was no credible evidence upon which the Court could find loss of past earnings on automobile customizing. The Plaintiff has failed to establish facts necessary to support an award for loss of past earnings. The Plaintiff offers no documented evidence indicating his earnings from customizing vehicles decreased after his injury. His tax returns show no amount claimed as income from customizing automobiles and he does not pay any sales tax with regard to his activities. It appears that the Plaintiff only accepts cash or barters in payment for services rendered. However, he has produced no evidence documenting any such transactions. While the Defendant elicited testimony from one individual for whom the Plaintiff restored a vehicle, the Plaintiff produced no evidence of past earnings. With no history of earnings customizing vehicles, any award would be speculative. The evidence in this case does not support an award for past loss of earnings.

(2)   Future - Vehicle Customizing

The Plaintiff relies upon the same reasoning in arguing for both past and future loss of earnings. Accordingly, the Court's analysis of the Plaintiff's claim for past loss of earnings is equally applicable to the alleged loss of future earnings. The Defendant's vocational expert testified that in addition to a history of past earnings, a reliable loss of earning capacity determination also requires functional limitations. The Court agrees. Dr. Alvine did not order any restrictions other than those which were post-surgical. Dr. Forrette similarly did not note

11

any long-term restrictions. Although the Plaintiff may endure a certain amount of discomfort customizing vehicles as a result of the injury, the lack of functional limitations further supports a finding that no award for future loss of earnings is warranted.

To provide any award for loss of earnings, the Court would be required to engage in a significant amount of speculation. "SDCL § 21-1-10 allows damages for detriment 'certain to result in the future.' The word 'certain' is not used in its absolute sense; its purpose is to ensure that facts exist which afford a basis for measuring the loss with reasonable certainty." Keegan v. First Bank of Sioux Falls, 470 N.W.2d 621, 624 (S.D. 1991). In this case, there is insufficient evidence to provide a factual basis by which the Court could measure the Plaintiff's future loss of earnings with any reasonable degree of certainty. The Plaintiff is not entitled to an award for future loss of earnings for vehicle customizing.

(3)  Past - Farming

The Plaintiff seeks to recover past loss of earnings from farming. The Plaintiff testified that he works 8-20 hours per week with the total number of hours varying with the different seasons. The Plaintiff's wife testified that replacement help was necessary, and she hired such labor at a rate of $9.50 per hour. In calculating his lost earnings, the Plaintiff applies the 15%-20% loss of earning capacity percentage identified by Ostrander.

The Court will award $500 for 2002, the year in which the Plaintiff underwent the surgical procedure. An award of $500, however, is the most the record will support. The Court is not persuaded that the Plaintiff suffered any loss as a result of his inability to work on the farm except for the year 2002.

The Plaintiff's tax returns with respect to the farm indicate no amount claimed as expense for labor in 2001 and 2003. Although the Plaintiff's wife testified that replacement labor was necessary, there is no evidence indicating the number of hours on a weekly or annual basis outside help was required to operate the farm. There is similarly no evidence indicating the cost of the replacement labor. The Court finds that the lack of documented labor expense tends to indicate that the Plaintiff was capable of performing his necessary limited duties at the farm. Moreover, the Plaintiff's reliance on Ostrander's testimony in support of his claim is misplaced. Ostrander's testimony and report related primarily to the Plaintiff's activities customizing vehicles. His testimony is not credible with respect to the Plaintiff's loss of earnings from the farm. The record simply does not support a substantial award to compensate the Plaintiff for past lost income as a result of the injury to his toe.

(4)　　Future - Farming

The Plaintiff utilizes the same arguments and calculations in his assertions in support of an award for future loss of earnings. Therefore, the previously mentioned reasoning is equally applicable to the alleged loss of future earnings. The lack of documented amounts paid for replacement labor in 2003 indicates that the Plaintiff is capable of performing his duties. Moreover, Ostrander's generalizations in his report do not support an award for future loss of earnings with respect to the farm. The Court is convinced that the Plaintiff will be able to perform his limited duties on the farm in the future without loss. There is an insufficient amount of evidence to support an award for future loss of income. Accordingly,

13

IT IS ORDERED:

That the Court finds in favor of the Plaintiff and against the Defendant on the negligence claim stated in the Complaint. The Plaintiff is entitled to recover damages in the amount of $108,313.34.

Dated this ___18th___ day of August, 2005.

BY THE COURT

_____
John B. Jones
Senior Judge

14